UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Christopher Baylor,<br><br>    Plaintiff,<br><br>v.<br><br>Ayano Eto,<br><br>    Defendant. | Case No. 19-cv-280 (MJD/HB)<br><br>**REPORT AND RECOMMENDATION** |

Christopher Baylor, 491 Baltimore Pike, 105, Springfield PA 19064, pro se

Elizabeth F. Sauer, Liselotte D. Schluender, and Theresa Ashmead, Central Minnesota Legal Services, 430 First Avenue North, Suite 359, Minneapolis, MN 55401, for Ayano Eto

HILDY BOWBEER, United States Magistrate Judge

  This matter is before the Court on Defendant Ayano Eto's Motion to Dismiss [Doc. No. 9] and Plaintiff Christopher Baylor's Second Motion to Transfer/Change Venue [Doc. No. 38]. The motions were referred to this Court for report and recommendation by the Honorable Michael J. Davis in orders of referral dated March 6, 2019 [Doc. No. 19] and April 18, 2019 [Doc. No. 40].

**I. Background**

  **A. Allegations in the Complaint**

Plaintiff Christopher Baylor brings this action against his ex-wife, Defendant

Ayano Eto,[1] pursuant to 42 U.S.C. § 1983. (*See* Compl. ¶ 1 [Doc. No. 1].) Generally, Baylor contends that Eto wrongly obtained status as a temporary resident of the United States, kidnapped their minor child, deprived Baylor of custody and visitation, misused legal proceedings, and deprived Baylor of various constitutional and other rights. (*Id.*) He asserts that jurisdiction arises under both 28 U.S.C. § 1331 and § 1332. (*Id.* ¶¶ 2–4.)

Baylor accuses Eto of a myriad of offenses and wrongs. Baylor contends that Eto married him for the purpose of evading immigration laws. (*Id.* ¶¶ 10–11, 23–24.) He claims that Eto has falsely accused him of criminal offenses, threatened him with bodily harm, verbally threatened him, battered and assaulted him, falsely imprisoned him, and used a deadly weapon against him. (*Id.* ¶¶ 12, 15–16, 22, 25, 28–29.) He accuses Eto of filing a false police report against him. (*Id.* ¶ 19.) He claims that Eto held him in involuntary servitude in violation of the Thirteenth Amendment. (*Id.* ¶ 13.) He accuses Eto of impeding his right of ingress into Minnesota. (*Id.* ¶ 20.) He asserts that Eto has committed child abduction. (*Id.* ¶¶ 32–36.) Baylor characterizes Eto's actions pertaining to child custody and visitation rights as interference with his liberty interest under the Due Process Clause of the Fourteenth Amendment. (*Id.* ¶ 31.) He contends that Eto has denied him equal protection based on his race. (*Id.* ¶ 27.) He submits that Eto has violated criminal statute 18 U.S.C. § 242 by depriving him of rights under color of law

---

[1] According to Defendant Ayano Eto, her legal name is Ayano Eto Baylor. (Def.'s Mem. Supp. Mot. Dismiss at 1 n.1 [Doc. No. 10].) She took Baylor's last name when they married. (*Id.*) The Court will refer to her as "Eto" in this Report and Recommendation, however, because that is consistent with the caption and will avoid confusion with Plaintiff Christopher Baylor, to whom the Court will refer as "Baylor."

(*id.* ¶ 31), and several other criminal statutes.

Baylor seeks relief in the form of, *inter alia*, an injunction barring his minor child from leaving the United States; a surety bond placed on the child; the termination of state court orders issued on October 10, 2017, and November 16, 2017; a new trial; an order denying Eto's application to adjust immigration status; monetary damages of $666,666; special damages of $268,348; and an award of punitive damages. (*Id.* Prayer for Relief.)

### B.     Eto's Motion to Dismiss

Eto filed a motion to dismiss on March 4, 2019, pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6). She seeks dismissal of all claims on the grounds of lack of subject matter jurisdiction pursuant to Rule 12(b)(1), and failure to state a claim for relief pursuant to Rule 12(b)(6). Eto also submitted several exhibits for the Court's consideration, all of which are judicial orders that the Court may consider in the context of the motion to dismiss. *See Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931 (8th Cir. 2012) (quoting 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1357 (3d ed. 2004)); *Residential Funding Co., LLC v. Wallick & Volk, Inc.*, No. 13-cv-3512 (MJD/JJG), 2014 WL 3955257, at *2 (D. Minn. Aug. 13, 2014) (citing *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999)).

The exhibits submitted by Eto disclose the following. Baylor and Eto are married and have a child together. (*See* Sauer Aff. Ex. 1 (*Baylor v. Baylor*, Court File No. 27-DA-FA-17-6539, Second Amended Order for Protection at 3 (Hennepin Cty. Dist. Ct.)) [Doc. No. 12-1].) Eto filed a petition for an order of protection on October 4, 2017, and an ex parte order for protection was issued on October 5, 2017, for Eto and the minor

child.  (*See id.*)  On November 17, 2017, Eto obtained an order for protection following a hearing against Baylor.  (*See id.* at 2.)  The order for protection was affirmed by the Minnesota Court of Appeals.  *Baylor v. Baylor*, No. A18-0077, 2018 WL 2187189, at *1 (Minn. Ct. App. May 14, 2018), *review denied* (July 17, 2018).

On January 11, 2018, Eto obtained a second order for protection following a hearing.  (Second Amended Order for Protection at 2.)  In that order, the court determined that Baylor had committed domestic abuse against Eto and their minor child.  (*Id.* at 4.)  The court also limited Baylor's communications to Eto to two texts per day related to urgent child issues.  (*Id.* at 5–6.)  For the safety of Eto and the child, the court continued the previous terms and conditions of custody and parenting time, which included temporary sole legal and physical custody to Eto, no unsupervised or unrestricted parenting time with Baylor, and two hours of supervised parenting time with Baylor per week.  (*Id.* at 6.)  The court entered a no-contact provision, except for the two texts a day related to urgent child issues.  (*Id.* at 7.)

Baylor filed a petition for an order of protection against Eto in December 2017.  (*See* Sauer Aff. Ex. 4 (*Baylor v. Baylor*, Court File No. 62-DA-FA-17-1492, Domestic Abuse Order for Dismissal at 1 (Ramsey Cty. Dist. Ct. Dec. 28, 2017)) [Doc. No. 12-1].)  The petition was dismissed because Baylor's allegations did not rise to the level of domestic abuse.  (*Id.*)  Baylor filed a petition for a harassment restraining order against Eto and two of her attorneys in September 2018.  (*See* Sauer Aff. Ex. 5 (*Baylor v. Baylor*, Court File No. 62-HR-18-737, Order Denying Harassment Restraining Order After Hearing at 1 (Ramsey Cty. Dist. Ct. Sept. 27, 2018)) [Doc. No. 12-1].)  That petition was

4

denied. (*Id.*)

Eto filed a petition for dissolution of marriage on May 14, 2018. (Sauer Aff. Ex. 6 (*In re Marriage of Baylor*, Court File No. 17-FA-18-3158, Order at 2 (Hennepin Cty. Dist. Ct. Oct. 3, 2018)) [Doc. No. 12-1].) Baylor's motion to dismiss or transfer the venue of that matter was denied on October 3, 2018. (*Id.* at 4.) Baylor appealed, and the appeal was dismissed. (Sauer Aff. Ex. 7 (*In re Marriage of Baylor*, No. A18-1951 (Minn. Ct. App. Jan. 2, 2019)) [Doc. No. 12-1].) Baylor sought a writ of mandamus to compel the state district court to dismiss the dissolution proceeding; the petition was denied. (Sauer Aff. Ex. 8 (*In re Marriage of Baylor*, No. A18-2037 (Minn. Ct. App. Jan. 8, 2019)) [Doc. No. 12-1].) Baylor's second petition for writ of mandamus was also denied. (Sauer Aff. Ex. 9 (*In re Marriage of Baylor*, No. A18-2037 (Minn. Ct. App. Jan. 29, 2019)) [Doc. No. 12-1].)

**II.     Legal Standards**

Federal Rule of Civil Procedure 12(b)(1) permits a party to move to dismiss a complaint for lack of subject matter jurisdiction. A party contesting subject matter jurisdiction may mount either a facial challenge or a factual challenge to a court's jurisdiction. *See Osborn v. United States*, 918 F.2d 724, 729–30 & n.6 (8th Cir. 1990). On a facial attack, the court limits its consideration to the allegations of the complaint. *Id.* at 729 & n.6. On a factual attack, the court may consider matters outside the pleadings without converting the motion to one for summary judgment. *Id.* Here, Eto submitted materials outside the pleading, but those materials were judicial orders, not materials such as affidavits or deposition testimony. The Court therefore considers Eto's

arguments to be a facial challenge to subject matter jurisdiction.

On a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court "must take the well-pleaded allegations of the complaint as true, and construe the complaint, and all reasonable inferences arising therefrom, most favorably to the pleader." *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A court has the duty to construe liberally a pro se party's pleadings. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

### III. Discussion

#### A. Baylor's Claims Relating to the State Court Orders

Many of Baylor's claims attack or arise from aspects of the state court orders for protection and the denial of his petition for a harassment restraining order. Eto argues that the Court lacks subject matter jurisdiction over these claims because they are barred by the *Rooker-Feldman* doctrine.[2]

The *Rooker-Feldman* doctrine applies to "cases brought by state-court losers

---

[2] This doctrine is named after the two Supreme Court cases from which it derived: *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals. v. Feldman*, 460 U.S. 462 (1983).

complaining of injuries caused by state-court judgments rendered before the federal district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). Generally, state appellate courts review state district court decisions, with any subsequent federal review limited to the United States Supreme Court under 28 U.S.C. § 1257. As such, federal "appellate jurisdiction to reverse or modify a state-court judgment is lodged . . . exclusively in [the Supreme Court]." *Exxon Mobil Corp.*, 544 U.S. at 283.

*Rooker-Feldman* applies not only to "the rare case styled as a direct appeal," *Simes v. Huckabee*, 354 F.3d 823, 827 (8th Cir. 2004), but also to attempts to litigate different claims that are nevertheless "inextricably intertwined" with the state-court judgment, *D.C. Ct. App. v. Feldman*, 460 U.S. 462, 482 n.16 (1983). *See also Lemonds v. St. Louis Cty.*, 222 F.3d 488, 492 (8th Cir. 2000) ("The *Rooker-Feldman* doctrine forecloses not only straightforward appeals but also more indirect attempts by federal plaintiffs to undermine state court decisions."). The *Rooker-Feldman* doctrine is frequently applied to bar federal-court challenges to state-court divorce and custody proceedings. *E.g.*, *O'Grady v. Anoka Cty. Bd. of Comm'rs*, 333 F. App'x 147, 147–48, 2009 WL 3208736, at *1 (8th Cir. 2009); *Ballinger v. Culotta*, 322 F.3d 546, 549 (8th Cir. 2003); *Christ's Household of Faith v. Ramsey Cty.*, 618 F. Supp. 2d 1040, 1044–47 (D. Minn. 2009).

There are four requirements for *Rooker-Feldman* to apply:

> (1) the federal court plaintiff must have lost in state court, (2) the plaintiff must complain of injuries caused by a state court judgment, (3) the plaintiff must invite district court review and rejection of that judgment, and (4) the

7

state court judgment must have been rendered before the district court proceedings commenced.

*Christ's Household of Faith v. Ramsey Cty.*, 618 F. Supp. 2d 1040, 1044 (D. Minn. 2009) (citing *Skit Int'l, Ltd. v. DAC Techs. of Ark., Inc.*, 487 F.3d 1154, 1156–57 (8th Cir. 2007)).

All four requirements are present here with respect to many of Baylor's claims. First, Baylor "lost" in state court in that orders for protection were issued against him on October 5, 2017; November 17, 2017; and January 11, 2018. Second, Baylor's claims of parental abduction/kidnapping, deprivation of custody and visitation, misuse of legal proceedings, false accusations of criminal activity, false imprisonment, involuntary servitude in violation of the Thirteenth Amendment, impeded right of ingress into Minnesota, child abduction, deprivation of liberty under the Due Process Clause, equal protection, and violation of 18 U.S.C. § 242 all arise from the terms and conditions of the orders for protection. Third, by asking this Court to issue an injunction barring his minor child from leaving the country, place a surety bond on the child, and terminate the orders of protection, Baylor has invited this Court to review and reject the state court judgments. Fourth, the orders for protection were issued before Baylor commenced this case. The Court therefore concludes that the claims described in this paragraph are barred by the *Rooker-Feldman* doctrine.

Similarly, Baylor "lost" in state court when his petition for a harassment restraining order against Eto was denied. The basis for that petition was that Eto had verbally threatened, battered, and assaulted Baylor. The petition was denied before this

case was commenced. To the extent any of Baylor's claims arise from the denial of the harassment restraining order and he is seeking to invalidate that decision, the claims would also be barred by *Rooker-Feldman*.

Insofar as Baylor is challenging any aspect of the ongoing marital dissolution proceeding, that claim would be precluded by the *Younger* abstention doctrine. Under *Younger v. Harris*, 401 U.S. 37 (1971), "federal courts should abstain from exercising their jurisdiction if (1) there is an ongoing state proceeding, (2) that implicates important state interests, and (3) that provides an adequate opportunity to raise any relevant federal questions." *Tony Alamo Christian Ministries v. Selig*, 664 F.3d 1245, 1249 (8th Cir. 2012). These three factors are present here. First, there is an ongoing marital dissolution proceeding. Second, Minnesota has important state interests in domestic relations and family matters. *Carlson v. Cty. of Ramsey*, No. 16-cv-765 (SRN/BRT), 2016 WL 3352196, at *6 (D. Minn. June 15, 2016) (citations omitted), *aff'd*, 673 F. App'x 601 (8th Cir. 2017). Third, Baylor may raise any federal constitutional or other claims in the state proceeding. Accordingly, abstention is warranted to the extent any of Baylor's claims seek to interfere with the ongoing state court marital dissolution proceeding.

### B. Baylor's Claims Relating to Eto's Immigration Status

Baylor claims that Eto wrongly obtained temporary resident status and married him for the purpose of evading immigration laws, in violation of 8 U.S.C. § 1325(a) and (b), and § 1186a. (Compl. ¶¶ 9–11, 14.) These challenges to Baylor's immigration status are not cognizable in this civil action between Baylor and Eto. Congress has designated the Secretary of Homeland Security, not private citizens, as the official charged with the

9

administration and enforcement of immigration laws. *Cedrins v. Shrestha*, No. 09-cv-348 (LH/GBW), 2009 WL 10708157, at *4 (D.N.M. June 24, 2009) (citing 8 U.S.C. § 1103(a)(1)).  No language in § 1325 or § 1186a confers or implies a private right of action between two individuals.  Consequently, Baylor's claims challenging Eto's immigration status should be dismissed.

### C. Baylor's Claims Based on Criminal Statutes

Baylor refers to several criminal statutes in his complaint, including 18 U.S.C. § 242 and 18 U.S.C. § 113.  These statutes do not provide for a private right of action. *See McDermott v. IRS*, No. 00-cv-378 (MJD/RLE), 2001 WL 1771645, at *1 n.2 (D. Minn. Mar. 27, 2001) (18 U.S.C. § 242); *Risley v. Hawk*, 918 F. Supp. 18, 21 (D.D.C. 1996) (18 U.S.C. § 113), *aff'd*, 108 F.3d 1396 (D.C. Cir. 1997).  As a general matter, private citizens lack standing to enforce criminal statutes.  *See Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."); *Jones v. Clinton*, 206 F.3d 811, 812 (8th Cir. 2000) (stating a private individual does not have standing to bring an action for criminal contempt).  Baylor has not shown or argued otherwise with respect to any of the criminal statutes he cites.  Consequently, any claims based on criminal statutes should be dismissed.

### D. Baylor's § 1983 Claims

Baylor brought this case pursuant to 42 U.S.C. § 1983.  (Compl. ¶ 1.)  To state a claim under § 1983, a plaintiff must allege that "(1) that the defendant(s) acted under color of state law, and (2) that the alleged wrongful conduct deprived the plaintiff of a

constitutionally protected federal right." *Schmidt v. City of Bella Villa*, 557 F.3d 564, 571 (8th Cir. 2009). Thus, "[o]nly state actors can be held liable under § 1983." *Youngblood v. Hy-Vee Food Stores, Inc.*, 266 F.3d 851, 855 (8th Cir. 2001).

Baylor fails to allege facts that would support a plausible inference that Eto is a state actor. Eto is a private citizen. Her use of the state court system did not transform her into a state actor. *See Harley v. Oliver*, 539 F.2d 1143, 1146 (8th Cir. 1976). Nor did filing a police report. *See Arlotta v. Bradley Center*, 349 F.3d 517, 524 (7th Cir. 2003); *Mosley v. Reeves*, 99 F. Supp. 2d 1048, 1055 (E.D. Mo. 2000). Accordingly, all of Baylor's claims arising under § 1983 should be dismissed.

### E.   Potential New Claims Raised in Baylor's Opposition

In Baylor's memorandum in opposition to the motion to dismiss, he alleges several potential new claims.

Baylor contends that Eto committed fraudulent misrepresentation in order to enter into a relationship with him and gain entry into the United States. (Pl.'s Mem. Opp'n Mot. Dismiss at 2 [Doc. No. 23].) As discussed above, Baylor's challenges to Eto's immigration status are not cognizable in this civil action between Baylor and Eto. Thus, to the extent Baylor would attempt to seek to amend his complaint to add this claim, amendment would be futile, and the Court recommends that any such amendment be denied.

Baylor next argues that Eto used his race and religion to restrict his freedom, speech, and movement, in violation of his constitutional rights. (Pl.'s Mem. Opp'n Mot. Dismiss at 2.) To the extent this claim is not already covered by the existing allegations,

11

the claim does not set forth sufficient factual matter to state a plausible claim for relief. Moreover, any such claim would be barred by *Rooker-Feldman* and would also be subject to dismissal for lack of state action. Consequently, amendment would be futile.

Baylor also accuses Eto of violating 18 U.S.C. § 1204, a criminal statute prohibiting international parental kidnapping; 25 C.F.R. § 11.406, a criminal offense listed in the Courts of Indian Offenses and Law and Order Code; 18 U.S.C. § 1584, a criminal statute prohibiting sale into involuntary servitude; 18 U.S.C. § 241, a criminal statute prohibiting conspiracy to violate civil rights; and 18 U.S.C. § 1001, a criminal statute applicable to fraud and false statements. (Pl.'s Mem. Opp'n Mot. Dismiss at 2–4, 20.) These criminal statutes do not provide for a private right of action. Thus, to the extent Baylor's argument could be construed as a request to amend, amendment would be futile.

### F.     Baylor's Motion to Change Venue

Baylor asks to transfer this case "back to the Northern District of Minnesota where venue was first filed." (Pl.'s Mot. Change Venue [Doc. No. 38].) Baylor mailed his complaint to the Gerald W. Heaney Federal Building and United States Courthouse in Duluth, Minnesota.

Consistent with Court's recommendation that all claims in this case be dismissed, the Court recommends that Baylor's motion to change venue be denied. Alternatively, the Court recommends that the motion be denied because there is no federal judicial district known as the "Northern District of Minnesota." Rather, "[t]he State of Minnesota constitutes one judicial district, divided into six divisions." D. Minn. LR 83.11(a). Cases

are assigned "to particular divisions and particular judges in accordance with the Order for Assignment of Cases that the court's district judges have adopted." D. Minn. LR 83.11(b). That Baylor chose to mail his complaint to the federal courthouse in Duluth, Minnesota, is not a factor in the assignment of the case.

### IV.     Recommendation

For the reasons set forth above, the Court recommends that all of Baylor's claims against Eto be dismissed. The Court further recommends that dismissal be with prejudice because it is not likely that Baylor could allege additional facts that would save any of his claims. *See Jackson v. Walgreens Co.*, No. 16-0398 (JRT/FLN), 2016 WL 4212258, at *2 (D. Minn. Aug. 10, 2016). Accordingly, based on the above and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendant Ayano Eto's Motion to Dismiss [Doc. No. 9] be **GRANTED**; and

2. Plaintiff Christopher Baylor's Second Motion to Transfer/Change Venue [Doc. No. 38] be **DENIED**.


Dated: April 29, 2019            s/ *Hildy Bowbeer*
                                 HILDY BOWBEER
                                 United States Magistrate Judge


### NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under District of Minnesota Local Rule 72.2(b)(1), "[a] party may file and serve specific written objections to a magistrate judge's proposed findings and recommendations within 14 days after being served with a copy" of the Report and

Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the formatting parameters set forth in LR 72.2(c).